1

2

3

4

5

6                          UNITED STATES DISTRICT COURT
                          WESTERN DISTRICT OF WASHINGTON
7                                    AT SEATTLE

8   _____
                                            )
9   ALFRED NEWBERRY,                        )
                                            )          No. C06-742RSL
10                          Plaintiff,       )
                                            )
           v.                               )
11                                           )          ORDER GRANTING DEFENDANTS'
    FIBERGLASS STRUCTURAL                    )          MOTION TO DISMISS
12  ENGINEERING, INC., and RANDY            )
    RAPOZA,                                  )
13                                           )
                            Defendants.      )
14  _____)

15                                I.  INTRODUCTION

16          This matter comes before the Court on "Defendants' Motion to Dismiss" (Dkt. #10).

17  Defendants assert that they are immune from plaintiff's defamation and respondeat superior

18  claims because the statement contained in defendant Randy Rapoza's July 1, 2003 e-mail, upon

19  which plaintiff bases his claims, is covered by both Washington's and California's litigation

20  privilege.  For the reasons discussed below, the Court grants defendants' motion and dismisses

21  plaintiff's claims without prejudice with leave to amend.[1]

22

23

24          [1] "In dismissing for failure to state a claim, 'a district court should grant leave to amend even if
    no request to amend the pleading was made, unless it determines that the pleading could not possibly be
25  cured by the allegation of other facts.'"  Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995) (quoting
    Cook, Perkiss & Liehe v. N. Cal. Collection Serv., 911 F.2d 242, 247 (9th Cir. 1990)).
26

    ORDER GRANTING DEFENDANTS'
    MOTION TO DISMISS

## II.  DISCUSSION

**A.  Background**

On May 26, 2006, plaintiff filed a complaint pro se for defamation and respondeat superior against defendants Fiberglass Structural Engineering, Inc. and Randy Rapoza.  See Dkt. #1 (Complaint).  On August 14, 2006, before any responsive pleading had been filed, plaintiff retained counsel to represent him in this case.  See Dkt. #2 (Notice of Appearance).  Plaintiff bases his case on a July 1, 2003 e-mail sent from defendant Rapoza to Jeh Moody, the president of Fibertech Engineering.  See Dkt. #1 at ¶8.  Plaintiff alleges that Fibertech Engineering filed a lawsuit against his company, FEMech, in the Superior Court of California, San Diego County, North County Division, styled:  Fiber-Tech Engineering, Inc. v. FEMech (Case No. GIN031249 (2003)).  Id. at ¶7.  Plaintiff alleges that after the lawsuit in San Diego was filed by Fibertech Engineering, its president, Jeh Moody consulted with defendant Rapoza to analyze a report made by another engineer, Martin Hollman.  Id. at ¶8.   Plaintiff further alleges that defendant Rapoza responded to Jeh Moody with the following e-mail on July 1, 2003:

> Jeh, We have briefly reviewed the materials you provided regarding the FRP
> Demister and Venturi Scrubber.  If there were no additional calculations provided
> by Femech Engineering then we can generally concur with Martin Hollman's
> conclusions.  Experienced FRP designers are well aware that shear transfer
> through the core material is a significant issue.  It is FSE's standard practice to
> calculate shear stresses in the core material and to provide an adequate margin of
> safety.  We see no evidence in the reports presented by Femech that core shear
> stresses were checked or considered.  In our opinion this is a serious omission and
> may well have led to the problems you have experienced.  We would expect to
> review additional materials and to perform and independent analysis in support of
> this opinion at some point in the future.  Regards, Fiberglass Structural
> Engineering[;] Randal J. Rapoza P.E.[;] Principal Engineer[.]

Id. at ¶8; Ex. 1; Dkt. #11, Ex. A.

Plaintiff alleges that this e-mail by defendant Rapoza, "made the California [Fiber-Tech Engineering, Inc. v. FEMech] lawsuit possible, because under California law, no lawsuit alleging negligence against a licensed engineer may proceed without the expert opinion of an independent engineer stating that the work was negligent."  Dkt. #1 at ¶13.  As a result, plaintiff

claims that he "suffered enormous harm both in terms of money spent defending himself in the lawsuit with Fiber-Tech and damage to his professional reputation, all as a direct and proximate result of the opinion expressed by Defendant Rapoza." Id. at ¶37.  Defendants move for dismissal without prejudice under Fed R. Civ. P. 12(b)(6) because they claim defendant Rapoza's e-mail is covered by both California and Washington absolute immunity law.  See Dkt. #10-2 (Proposed Order).

**B. Analysis**

**1.  Motion to Dismiss Standard**

Defendants filed their motion to dismiss under Fed. R. Civ. P. 12(b)(6).  In opposition, plaintiff argues that the motion should be considered a Rule 12(c) motion for judgment on the pleadings because defendants answered the complaint before filing the motion.  See Response at 1.[2]  The Court agrees, but in this case whether the motion is considered under Rule 12(b)(6) or 12(c) is a distinction without difference because the standard remains the same:  the Court's review is limited to material contained or attached to the complaint, and this material must be construed in the light most favorable to plaintiff.  See Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995).  The Court also construes the complaint liberally because it was drafted when plaintiff was proceeding pro se.  Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir. 2004) ("We construe the complaint liberally because it was drafted by a pro se plaintiff.") (citing Eldridge v. Block, 832 F.2d 1132, 1137 (9th Cir. 1987).  However, the Court notes that plaintiff retained counsel shortly after the complaint was filed, and that an amended complaint could have been filed as a matter of course under Fed. R. Civ. P. 15(a) before defendants filed their motion to dismiss had plaintiff's counsel thought it prudent to do so.

In order to dismiss an action based on an affirmative defense, the complaint must contain

---

[2]  The Court notes at the outset that the format of plaintiff's response fails to comply with Local Civil Rule 10(e).  Plaintiff's counsel is strongly urged to comply with the required pleading format in any future filings with the Court.  See Appendix A to the Local Civil Rules.

allegations on its face showing that the affirmative defense applies.  See McCalden v. California Library Ass'n, 919 F.2d 538, 543 (9th Cir. 1990) ("For a complaint to be dismissed because the allegations give rise to an affirmative defense 'the defense clearly must appear on the face of the pleading.'") (citing C. Wright & A. Miller, 5A Federal Practice and Procedure, § 1357, at 348-49 (2d ed. 1990)).  Uncertain what law the Court would apply to the facts of this case, in their answer and motion, defendants asserted both California's and Washington's absolute litigation privilege as an affirmative defense to plaintiff's claims.[3]  While the parties contest whether California or Washington law applies, the Court does not reach the choice-of-law issue because, as discussed below, allegations giving rise to the absolute litigation privilege under both California and Washington law appear on the face of plaintiff's complaint.  For clarity, however, the Court applies California's and Washington's applicable privilege law separately.

### 2.  California law

Under California Civil Code § 47(b), communications made in or related to judicial proceedings are immune from tort liability.  The privilege "afford[s] litigants and witnesses the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions" and "applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action."  Silberg v. Anderson, 786 P.2d 365, 369 (Cal. 1990) (internal citation omitted).  If these requirements are satisfied, § 47(b)'s privilege is absolute.  Id. at 371.  A defamation suit may be dismissed under Cal. Civ. Code § 47 on a Fed. R. Civ. P. 12(b) motion to dismiss.  See, e.g., Hagendorf v. Brown, 699 F.2d 478, 481 (9th Cir. 1983) (affirming Rule 12(b)(6) dismissal of a defamation

---

[3]  See Dkt. #8 at 4 ("By way of further answer and affirmative defense defendants allege as follows: . . . 4.  That plaintiff's claims are barred, under both Washington and California law, Cal. Civ. Code § 47(b), because expert testimony and communication related to judicial proceedings is absolutely privileged and defendants are therefore immune from all causes of action stemming from such action[.]").

ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS                    -4-

action under absolute immunity pursuant to Cal. Civ. Code § 47).   In this case, based on the allegations in the complaint alone, defendants have met their burden of establishing the preliminary facts justifying application of the affirmative defense of the litigation privilege and dismissal under Fed. R. Civ. P.12(c).

First, based on the allegations in the complaint, defendant Rapoza's statement was made in the context of a judicial proceeding.  This first part of the <u>Silberg</u>-test is broad, covering "any publication required or permitted by law in the course of a judicial proceeding to achieve the objects of the litigation, even though the publication is made outside the courtroom and no function of the court or its officers is involved." <u>Silberg</u>, 786 P.2d at 369.  In this case, the allegations in paragraph 13 of the complaint satisfy this requirement:  "Defendant Rapoza's statements made the California lawsuit possible, because under California law, no lawsuit alleging negligence against a licensed engineer may proceed without the expert opinion of an independent engineer stating that the work was negligent"[4] showing that defendant Rapoza's statement was "required . . . by law in the course of a judicial proceeding to achieve the objects of the litigation." <u>Id.</u>, Dkt. #1, ¶13.

Despite this allegation, plaintiff argues that the litigation privilege does not apply because defendant Rapoza's e-mail was not "made preliminary to a <u>proposed</u> judicial or quasi-judicial proceeding." <u>See</u> Response at 11 (emphasis in original) (citing <u>Edwards v. Centex Real Estate Corp.</u>, 61 Cal. Rptr. 2d 518, 530 (Cal. Ct. App. 1997).  However, this argument is directly

---

[4]  Although not referenced in plaintiff's complaint, this requirement is contained in California Code of Civil Procedure § 411.35.  As defendants note in footnote 1 of their reply, dismissal of this case based on privilege accords with § 411.35, because this section itself contains privilege protection for the engineer consulted.  <u>Id.</u> at § 411.35(e) (stating "an attorney who submits a certificate as required by paragraph (1) or (2) of subdivision (b) has a privilege to refuse to disclose the identity of the . . . professional engineer . . . consulted and the contents of the consultation.  The privilege shall also be held by the . . . professional engineer . . . so consulted."   In this case, defendant Rapoza's identity and the contents of the June 1, 2003 e-mail were allegedly disclosed because plaintiff was able to match statements made in a May 27, 2005 motion in the California action with an earlier e-mail identified as being authored by defendant Rapoza.  <u>See</u> Dkt. #1 at ¶11.

ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS                                        -5-

1  contradicted by paragraph 8 of the complaint, which alleges that litigation had commenced

2  before defendant Rapoza wrote the June 1, 2003 e-mail.  See Dkt. #1, ¶8 ("After the above-

3  described lawsuit was filed . . . Rapoza, made the statements contained in the email which is

4  attached hereto as Exhibit 1[.]") (emphasis added).  Although plaintiff claims in a footnote to his

5  response that the California lawsuit was in fact filed after Rapoza's e-mail was written, in ruling

6  on a motion to dismiss a court "cannot consider material outside of the complaint (e.g., those

7  facts presented in briefs, affidavits, or discovery materials)."  See Yoonessi v. Albany Medical

8  Ctr., 352 F. Supp. 2d 1096, 1098 (C.D. Cal. 2005) (citing Branch v. Tunnell, 14 F.3d 449, 453

9  (9th Cir. 1994); Schneider v. Cal. Dep't of Corr., 151 F.3d 1194, 1197 (9th Cir. 1998) ("In

10  determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the

11  complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's

12  motion to dismiss.") (emphasis in original); Response at 2, n.1.  Furthermore, Edwards does not

13  apply to the facts of this case because here there was an actual prior judicial proceeding and

14  plaintiff alleges that the prior lawsuit was not possible but-for defendant Rapoza's e-mail.  See

15  Dkt. #1, ¶13 ("Defendant Rapoza's statements made the California lawsuit possible").

16  Therefore, the Edwards decision is distinguishable because it involved an attempt to protect

17  allegedly fraudulent statements made more than five years before any prior litigation.  Edwards,

18  61 Cal. Rptr. 2d at 522-24.

19       Second, under the Silberg-test, defendants are covered by the litigation privilege as "other

20  participants authorized by law."  As plaintiff's complaint alleges, "[d]efendant Rapoza's

21  statements made the California lawsuit possible" because they were an "expert opinion of an

22  independent engineer stating that the work was negligent."  See Dkt. #1 at ¶13.  California

23  courts have extended the privilege to potential expert witnesses.  See ITT Telecom Prods. Corp.

24  v. Dooley, 262 Cal. Rptr. 773, 778 (Cal. Ct. App. 1989) ("[T]he privilege has been extended to

25  statements made by potential expert witnesses").  Therefore, defendants are the type of judicial-

26  proceeding participants covered by the litigation privilege.

ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS                           -6-

1   Third and finally, the California Supreme Court has characterized the "objects of the

2   litigation" element of the <u>Silberg</u>-test as "simply part of the [fourth] requirement that the

3   communication be connected with, or have some logical relation to, the action, i.e., that it not be

4   extraneous to the action."  <u>Silberg</u>, 786 P.2d at 374.  Here, defendant Rapoza's e-mail is

5   connected with the California action and helped "to achieve the object of the litigation" because

6   plaintiff's complaint plainly states that defendant Rapoza's e-mail "made the California lawsuit

7   possible."  Dkt. #1 at ¶13.  For this reason, plaintiff's citation to <u>Daniel v. Nguyen</u>, 81 Cal. Rptr.

8   2d 392 (Cal. Ct. App. 1999), is not applicable because not only did the <u>Daniel</u> case involve a

9   pre-civil litigation demand letter, which is not at issue here, but the court determined that there

10  was not an adequate "connection" between the pre-litigation statement and the subsequent

11  litigation.  <u>Id.</u> at 398-99.  Here, as plaintiff alleged, not only was defendant Rapoza's statement

12  connected to the California litigation, it allowed the case to proceed.

13  In his response, plaintiff repeatedly asserts that defendant Rapoza's e-mail is not covered

14  by the privilege because the defendants did not know the e-mail formed the basis of the

15  California litigation.  <u>See, e.g.</u>, Response at 14 ("There has simply been no allegation made in

16  this case by either party that Rapoza or FSE <u>themselves</u> actually contemplated prospective

17  litigation or understood that the person Rapoza gave his opinion to actually contemplated

18  prospective litigation.").  Under California law, however, defendant Rapoza's knowledge is not

19  germane for purposes of applying the privilege to his June 1, 2003 e-mail.  <u>See</u> <u>Financial Corp.</u>

20  <u>of Amer. v. Wilburn</u>, 234 Cal. Rptr. 653, 659-60 (Cal. Ct. App. 1987) ("Plaintiffs' premise is

21  that the subjective intent, purpose, or knowledge of a writer can destroy the privileged status of

22  otherwise privileged statements.  The law is otherwise. . . . Courts respect the absolute aspect of

23  the privilege by considering a statement's apparent or ostensible connection to the underlying

24  action, without exploring the writer's actual, subjective intent or purpose."); <u>Silberg</u>, 786 P.2d at

25  374 ("The 'furtherance' requirement was never intended as a test of the participant's motives,

26  morals, ethics or intent."); <u>Rothman v. Jackson</u>, 57 Cal. Rptr. 2d 284, 288 (Cal. Ct. App. 1996)

ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS                    -7-

1
2

("The high court has specifically disapproved any interpretation of the 'furtherance' requirement as a test of the motives, morals, ethics or intent of the person claiming the privilege.").

3
4
5
6
7
8

For these reasons, based on the facts as alleged in the complaint, defendant Rapoza's e-mail is privileged under California Civil Code §47(b) and Silberg.  Rather than determine a fact-specific choice-of-law issue at this stage of the proceedings, as discussed below, the Court concludes that based on the allegations in the complaint, plaintiff's claims should be dismissed because defendants are also immune under Washington's common-law witness immunity doctrine.

9

### 3.  Washington law

10
11
12
13
14

In Washington, "absolute immunity extends to acts or statements of experts which arise in the course of or preliminary to judicial proceedings."  Bruce v. Byrne-Stevens & Assocs. Eng'rs, Inc., 113 Wn.2d 123, 137 (1989).  Where the absolute immunity doctrine applies, it justifies dismissal of an action.  Id. at 125 (affirming the trial court's dismissal).

15
16
17
18
19
20
21
22
23
24

In this case, Washington's absolute immunity doctrine extends to defendant Rapoza's e-mail because as alleged in the complaint, the e-mail was the statement of an expert arising in the course of a judicial proceeding.  Plaintiff's complaint characterizes the e-mail as a statement of an expert, alleging that:  "In the expert opinion which forms the basis of Count 1 [Defamation] of this Complaint, Defendant Rapoza falsely accuses Plaintiff of negligence in the design of the FRP Demister and Venturi Scrubber" and "Defendant Rapoza's statements made the California lawsuit possible, because under California law, no lawsuit alleging negligence against a licensed engineer may proceed without the expert opinion of an independent engineer[.]"  See Dkt. #1 at ¶¶ 19, 13 (emphasis added).  This last statement is a definitive allegation by plaintiff that the defendant Rapoza's e-mail arose the context of a judicial proceeding.

25
26

Under Cal. Code Civ. P. § 411.35, as part of a negligence action against a professional engineer, the plaintiff's attorney must file a certificate of merit stating that "there is a reasonable

and meritorious cause" for filing the action.  This certificate must contain a declaration that the attorney consulted with a professional engineer, and the "person consulted shall render his opinion that the named defendant or cross-defendant was negligent or was not negligent in the performance of the applicable professional services."  <u>Id.</u> at § 411.35(b)(1).  Plaintiff's complaint alleges that defendant Rapoza's statement satisfied this requirement by making "the California lawsuit possible."  Dkt. #1 at ¶13.  Based on this allegation, plaintiff cannot reasonably assert in his response to the motion to dismiss that the June 1, 2003 e-mail was not part of "the course of or preliminary to a judicial proceeding."

Plaintiff attempts to avoid the holding from <u>Bruce</u> cited above by quoting other language from the opinion.  Plaintiff argues that "any doubt that <u>Bruce</u> does not protect Rapoza or FSE in this case is removed by the <u>Bruce</u> Court itself:

> Respondents and amicus argue that Byrne-Stevens should not be shielded from liability merely because its calculations were later used in court.  <u>If the issue is stated that way, we agree</u>; but that is not the issue before us.  We do not hold that any professional negligence is immunized whenever an expert later relies on it in court.  In accord with existing law, we hold only that absolute immunity extends to acts and statements of experts which arise in the course of or preliminary to judicial proceedings.

Response at 7 (emphasis by plaintiff) (citing <u>Bruce</u>, 113 Wn.2d at 136-37).  The quote from <u>Bruce</u> emphasized by plaintiff, however, is not at issue here based on the allegations in the complaint because the inclusion of the June 1, 2003 e-mail in the California action was not an attempt by defendant Rapoza to immunize some prior act of professional negligence.  <u>See</u> Reply at 11 ("Defendants do not argue that Mr. Rapoza's opinion is protected or that Defendants are immune from suit because the opinion was later used in court.  Rather Defendants argue that the opinion is protected and Defendants are immune because California required the opinion in order for the plaintiff to pursue litigation, making it a statement made preliminary to a judicial proceeding.").  Therefore, contrary to plaintiff's assertion, his emphasized portion of the <u>Bruce</u> opinion does not remove defendant Rapoza's e-mail from the scope of Washington's absolute

1    immunity doctrine.

2         Plaintiff also attempts to distinguish defendants' citation to <u>Middlesex Concrete Prods. &</u>
3    <u>Excavating Corp. v. Carteret Indus. Ass'n</u>, 68 N.J. Super. 85, 172 A.2d 22 (1961), by stating that
4    in this case "the lawsuit had not been filed" prior to defendant Rapoza's e-mail.  As discussed
5    above, however, the complaint expressly states the California lawsuit was filed prior to
6    defendant Rapoza's e-mail and on a motion to dismiss the Court's review is limited to the
7    allegations contained on the face of the complaint.  <u>See</u> Dkt. #1 at ¶8.  And, even if the e-mail at
8    issue was authored before the complaint was filed, it is intimately connected with the <u>Fiber-Tech</u>
9    <u>Engineering, Inc. v. FEMech</u> proceeding as part of Cal. Code. Civ. P. § 411.35's certificate of
10   merit requirement.

11        Finally, plaintiff cites part of a sentence from <u>Deatherage v. Examining Bd. of</u>
12   <u>Psychology</u>, 134 Wn.2d 131 (1997), for the proposition that a witness must be "testifying"
13   before the privilege applies.  <u>See</u> Response at 6 ("<u>Deatherage</u> makes clear that the privilege is
14   only applicable to 'communications preliminary to a proposed judicial proceeding or as part of a
15   judicial proceeding <u>in which he is testifying</u>" (emphasis by plaintiff) (quoting <u>Deatherage</u>, 134
16   Wn.2d at 135).  First, the cited quotation from <u>Deatherage</u> was not authored by the Washington
17   Supreme Court itself, but rather it is from the Court's quotation of the Restatement (Second) of
18   Torts § 588.  Second, in discussing § 588, the <u>Deatherage</u> court explained that while "[t]his
19   court's early application of the privilege was consistent with the Restatement," "[i]n 1989, the
20   privilege was extended, and we held an expert witness cannot be found civilly liable for any
21   action done as part of a judicial function."  <u>Id.</u> at 135-36 (citing its 1989 <u>Bruce</u> decision).
22   Accordingly, the Washington Supreme Court has not held that the privilege applies only to
23   testifying experts.  Rather, as they reiterated in <u>Deatherage</u>, the privilege applies to "any action
24   done as part of a judicial function."  <u>Id.</u> at 136.  Here, the privilege applies because as plaintiff
25   alleged, defendant Rapoza's e-mail served a judicial function since it formed the basis for the

26

ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS            -10-

1   Cal. Code. Civ. P. § 411.35 certificate in the <u>Fiber-Tech Engineering, Inc. v. FEMech</u> case.

2          Washington's "[w]itness immunity is premised on the chilling effect of the threat of

3   subsequent litigation" and "[u]nless the whole, integral enterprise falls within the scope of

4   immunity, the chilling effect of threatened litigation will result in . . . adverse effects . . .

5   regardless of the immunity shielding the courtroom testimony." <u>Bruce</u>, 113 Wn.2d at 132, 135.

6   Based on the allegations in the complaint, dismissal of plaintiff's claims adheres to this policy

7   supporting Washington's immunity doctrine.

8                                 **III.  CONCLUSION**

9
          For all of the foregoing reasons, "Defendants' Motion to Dismiss" (Dkt. #10) is
10
    GRANTED and plaintiff's claims are DISMISSED WITHOUT PREJUDICE with leave to
11
    amend.
12

13
          DATED this 5th day of February, 2007.
14

15

16                                 _MMr S Casnik_

17                                 Robert S. Lasnik
                                   United States District Judge
18

19

20

21

22

23

24

25

26

ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS                       -11-