UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
ALFRED NEWBERRY,

                Plaintiff,

    v.

FIBERGLASS STRUCTURAL
ENGINEERING, INC., and RANDY
RAPOZA,

                Defendants.
_____

No. C06-742RSL

ORDER GRANTING
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

## I. INTRODUCTION

This matter comes before the Court on "Defendants' Motion for Summary Judgment Dismissal of Plaintiff's Claims" (Dkt. #30). In their motion, defendants assert that they are immune from plaintiff's defamation and respondeat superior claims because the statement contained in defendant Randy Rapoza's July 1, 2003 e-mail, on which plaintiff bases his claims, is covered by both California's litigation privilege and Washington's absolute immunity doctrine, is conditionally privileged, and because plaintiff's claims are barred by the statute of limitations. For the reasons discussed below, the Court grants defendants' motion for summary judgment.

//

//

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

## II. DISCUSSION

**A.   Procedural History.**

On May 26, 2006, plaintiff filed a complaint for defamation and respondeat superior against defendants Fiberglass Structural Engineering, Inc. and Randy Rapoza. See Dkt. #1 (Complaint). Plaintiff's complaint was based on a July 1, 2003 e-mail sent from defendant Rapoza to Jeh Mody, the president of Fiber-Tech Engineering, Inc. See Dkt. #1 at ¶8. Plaintiff alleged that Fiber-Tech Engineering, Inc. filed a lawsuit against his company, FEMech, in the Superior Court of California, San Diego County, North County Division, styled: Fiber-Tech Engineering, Inc. v. Alfred Newberry and FEMech Engineering (Case No. GIN031249 (2003)) (hereinafter the "California Lawsuit"). Id. at ¶7. Plaintiff alleged that after the California Lawsuit was filed by Fiber-Tech Engineering, Inc., its president, Jeh Mody consulted with defendant Rapoza to analyze a report made by another engineer, Martin Hollmann. Id. at ¶8. Plaintiff further alleged that defendant Rapoza responded to Jeh Mody with the following e-mail on July 1, 2003:

> Jeh, We have briefly reviewed the materials you provided regarding the FRP Demister and Venturi Scrubber. If there were no additional calculations provided by Femech [sic] Engineering then we can generally concur with Martin Hollman's [sic] conclusions.
>
> Experienced FRP designers are well aware that shear transfer through the core material is a significant issue. It is FSE's standard practice to calculate shear stresses in the core material and to provide an adequate margin of safety. We see no evidence in the reports presented by Femech [sic] that core shear stresses were checked or considered. In our opinion this is a serious omission and may well have led to the problems you have experienced. We would expect to review additional materials and to perform an independent analysis in support of this opinion at some point in the future. Regards, Fiberglass Structural Engineering[;] Randal J. Rapoza P.E.[;] Principal Engineer[.]

Id. at ¶8; Ex. 1; Dkt. #11, Ex. A.

Plaintiff alleged that this e-mail by defendant Rapoza, "made the California [Fiber-Tech Engineering, Inc. v. FEMech] lawsuit possible, because under California law, no lawsuit alleging negligence against a licensed engineer may proceed without the expert opinion of an

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT              -2-

independent engineer stating that the work was negligent." Dkt. #1 at ¶13.  As a result, plaintiff claimed that he "suffered enormous harm both in terms of money spent defending himself in the lawsuit with Fiber-Tech and damage to his professional reputation, all as a direct and proximate result of the opinion expressed by Defendant Rapoza."  Id. at ¶37.

On November 13, 2006, defendants filed a motion to dismiss without prejudice under Fed. R. Civ. P. 12(b)(6) because they asserted that defendant Rapoza's e-mail was covered by both California and Washington absolute immunity law.  See Dkt. #10-2 (Proposed Order).  The Court granted the Rule 12(b)(6) motion on February 6, 2007 and dismissed plaintiff's claims without prejudice and with leave to amend because the Court concluded that given the facts as alleged in the complaint, defendants were immune from suit under both California's litigation privilege and Washington's absolute immunity doctrine.  See Dkt. #23 (Order Granting Defendants' Motion to Dismiss).

On March 23, 2007, plaintiff filed an amended complaint alleging the same claims as in the original complaint, defamation and respondeat superior, against defendants.  See Dkt. #28 (Amended Complaint).  As in the original complaint, the foundation for plaintiff's claims in the amended complaint is the July 1, 2003 e-mail from defendant Rapoza to Jeh Mody.  Id. at ¶9 (quoting the July 1, 2003 e-mail); ¶21 ("Defendant Rapoza's statement to Jeh Moody [sic] constituted a false and defamatory evaluation of Plaintiff's work").  On May 10, 2007, defendants moved for summary judgment contending, among other things, that the defendants are immune from suit because the statement was intimately connected to the California Lawsuit.  See Dkt. #30 at 13.  Defendants' motion is now before the Court for consideration.

**B.    Background Facts.**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

In this case, the following facts are not in dispute:

On June 27, 2003, defendant Rapoza received an e-mail from Jeh Mody requesting "a statement from a registered P.E. [professional engineer] that . . . Femech [sic] Engineering was negligent in the performance of the professional services rendered." Dkt. #31 (Rapoza Decl.) at Ex. C. On July 1, 2003, defendant Rapoza responded to the request by e-mail, the content of which is quoted in Section II.A above. Id. at Ex. D. After receiving defendant Rapoza's e-mail on July 1, 2003, Jeh Mody forwarded the e-mail to his attorney in the California Lawsuit, Gary Higgins. Id. at Ex. F. The California Lawsuit was filed on July 15, 2003, and included a professional malpractice claim. See Dkt. #32 (Mody Decl.) at ¶8; Dkt #37 (Newberry Decl.) at Ex. 2 (Tentative Statement of Decision in California Lawsuit); Ex. #3 (Judgment in California Lawsuit).

As a part of filing the California Lawsuit, on July 15, 2003 Gary Higgins submitted an "Attorney Certificate Pursuant to Code of Civil Procedure Section 411.35," stating:

> 1. I am the attorney for Fiber-Tech Engineering in the matter captioned above. I have investigated the facts involved in the present dispute. 2. I have consulted with, and received an opinion from a licensed professional engineer in the same discipline as Defendants [Alfred Newberry and FEMech Engineering]. The engineer was made aware of the relevant facts surrounding the case. The engineer consulted is not a party to the litigation. 3. I concluded, on the basis of this review and consultation, that there is a reasonable and meritorious cause for the filing of this action. 5. [sic] The engineer consulted has rendered his or her opinion that Defendants were negligent in the performance of the applicable professional services.

Dkt. #33 (Beyerlein Decl.) at Ex. A. Ultimately, in December 2004, a judgment was entered in the California Lawsuit in favor of plaintiff in this case, Alfred Newberry, and against Fiber-Tech Engineering, Inc. See Dkt. #37 at Ex. 3.

After prevailing, on April 28, 2005, plaintiff Newberry filed a motion in the California Lawsuit for an order verifying noncompliance with California Code of Civil Procedure § 411.35 (hereinafter "CCP § 411.35") and seeking reasonable expenses, including attorney's fees. See Dkt. #33, Ex. B. This motion was fully briefed before the California Superior Court in the

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT            -4-

California Lawsuit. See id. at Exs. C-F (Fiber-Tech Engineering, Inc.'s response to motion for order verifying noncompliance); Exs. G, I (Alfred Newberry's reply in support of the motion).

On May 27, 2005, the California Superior Court denied the motion, stating:

> Defendant FEMech Engineering and Alfred Newberry's Motion for Order Veryifying Noncompliance With CCP Section 411.35 and for Payment of Reasonable Expenses, is denied.
>
> The evidence provided to the Court shows that Plaintiff [Fiber-Tech Engineering, Inc.] did in fact comply with CCP Section 411.35, and that he provided the Court with verification of this compliance.  The evidence shows that Plaintiff and Plaintiff's counsel consulted with two persons having expertise in the engineering and design of fiberglass laminate structures.  After reviewing the facts and <u>having obtained two opinions, one of whom was a licensed professional engineer, licensed in the same discipline as the Defendant, Plaintiff's counsel executed the Certificate</u>.  <u>The initial licensed expert witness consulted by the Plaintiff</u> did not testify at trial and Plaintiff later retained experts whose testimony the Court excluded or whose testimony the Court concluded was insufficient.

Dkt. #33 at I (Order of the Honorable Lisa Guy-Schall, San Diego County Superior Court Judge) (emphasis added).  The "licensed professional engineer" and the "initial licensed expert witness" referenced in this order is defendant Rapoza in this action.  See Dkt. #33, Exs. C-I.  Plaintiff Newberry did not appeal this ruling.  See Dkt. #32 at ¶11.

**C.  Analysis.**

In the February 6, 2007 order dismissing plaintiff's complaint, the Court concluded that defendant Rapoza's July 1, 2003 e-mail was privileged under California law by California Civil Code § 47(b) and Silberg v. Anderson, 786 P.2d 365 (Cal. 1990), and was covered by Washington's absolute immunity doctrine under Bruce v. Byrne-Stevens & Assocs. Eng'rs, Inc., 113 Wn.2d 123 (1989).  See Dkt. #23.  Based on the submissions of the parties and the undisputed facts, the Court reaches the same conclusion here on summary judgment.

    **1.  Defendants are immune from suit under California's litigation privilege.**

"For well over a century, communications with 'some relation' to judicial proceedings have been absolutely immune from tort liability by the privilege codified as section 47(b)." Rubin v. Green, 847 P.2d 1044, 1093-94 (Cal. 1993).  The privilege "afford[s] litigants and

witnesses the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions" and "applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." Silberg, 786 P.2d at 369 (internal citation omitted). If these requirements are satisfied, § 47(b)'s privilege is absolute. Id. at 371.

In this case, defendants argue that all the elements of California's litigation privilege have been met given Judge Guy-Schall's order concluding that defendant Rapoza's opinion formed the basis of a valid CCP § 411.35 certification. The Court agrees. Under CCP § 411.35, as part of a negligence action against a professional engineer, the plaintiff's attorney must file a certificate of merit stating that "there is a reasonable and meritorious cause" for filing the action. This certificate must contain a declaration that the attorney consulted with a professional engineer, and the "person consulted shall render his opinion that the named defendant or cross-defendant was negligent or was not negligent in the performance of the applicable professional services." Id. at § 411.35(b)(1).

The July 1, 2003 e-mail from defendant Rapoza to Jeh Mody was the opinion rendered. It is this e-mail that forms the basis of plaintiff's claims in this case. In reviewing whether there had been compliance with CCP § 411.35, Judge Guy-Schall reviewed the July 1, 2003 e-mail as part of the motion for an order of noncompliance, and ultimately concluded that defendant Rapoza's opinion formed the basis of a valid CCP § 411.35 certification. See Dkt. #33, Ex. C (Response to motion for order of noncompliance) (quoting the July 1, 2003 e-mail as the opinion forming the basis for the CCP § 411.35 certification); Dkt. #33, Ex. H (Sandoval Decl. from California Lawsuit) (attaching as Exhibit 1 the July 1, 2003 e-mail); Dkt. #33, Ex. I (Order).

The Court gives preclusive effect to this ruling. As defendants correctly assert in their motion, "'It is now well settled that a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT        -6-

judgment was rendered under the Constitution's Full Faith and Credit Clause and under 28 U.S.C. § 1738.'" Motion at 17 (quoting Holcombe v. Hosmer, 477 F.3d 1094, 1097 (9th Cir. 2007) (internal quotation marks and citation omitted)). Accordingly, the Court looks to California law to determine whether to give preclusive effect to Judge Guy-Schall's May 25, 2007 ruling. California law has five requirements for the application of collateral estoppel: "1) the issue to be precluded must be identical to that decided in the prior proceeding; 2) the issue must have been actually litigated at that time; 3) the issue must have been necessarily decided; 4) the decision in the prior proceeding must be final and on the merits; 5) the party against whom preclusion is sought must be in privity with the party to the former proceeding." California v. Garcia, 141 P.3d 197, 201 (Cal. 2006). The five requirements are met in this case.

First, Judge Guy-Schall determined that Fiber-Tech Engineering, Inc.'s reliance on defendant Rapoza's July 1, 2003 e-mail supported the CCP § 411.35 certification. Second and third, this issue was actually litigated through the motion for an order of noncompliance in the California Lawsuit and the issue was necessarily decided because plaintiff Newberry specifically requested that the court determine whether defendant Rapoza's opinion formed the basis of a valid CCP § 411.35 certification. Fourth, Judge Guy-Schall's order was on the merits and final because it was not appealed by plaintiff Newberry. And finally, the privity requirement is obviously satisfied because plaintiff Newberry here is the same individual who requested the order of noncompliance in the California Lawsuit. For these reasons, the Court gives preclusive effect to the May 25, 2005 California Superior Court ruling that defendant Rapoza's July 1, 2003 formed the basis of the CCP § 411.35 certification.

Applying this ruling in the California Lawsuit to the Silberg-test, the Court concludes that defendants are immune under § 47(b).[1] The first part of the Silberg-test is broad, covering "any

---

[1] In his response, plaintiff contends that "Defendant's motion appears to abandon the argument that Rapoza's statement is protected by the testimonial privilege of § 47(b) and to contend instead that the statement is privileged because Rapoza's identity should have been kept secret under § 411.35." See

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT        -7-

publication required or permitted by law in the course of a judicial proceeding to achieve the objects of the litigation, even though the publication is made outside the courtroom and no function of the court or its officers is involved." Silberg, 786 P.2d at 369. In this case, because the July 1, 2003 e-mail was used to satisfy CCP § 411.35's certification requirement in the California Lawsuit, the statement was "required . . . by law in the course of a judicial proceeding to achieve the objects of the litigation." Id.

Second, under the Silberg-test, defendants are covered by the litigation privilege as "other participants authorized by law." California courts have extended the privilege to potential expert witnesses. See ITT Telecom Prods. Corp. v. Dooley, 262 Cal. Rptr. 773, 778 (Cal. Ct. App. 1989) ("[T]he privilege has been extended to statements made by potential expert witnesses"). Judge Guy-Schall expressly concluded in her May 27, 2005 order that defendant Rapoza was acting as a potential expert witness. See Dkt. #33 at I ("The initial licensed expert witness consulted by the Plaintiff did not testify at trial[.]") (emphasis added). Therefore, defendants are the type of judicial-proceeding participants covered by § 47(b)'s litigation privilege.

Third and finally, the California Supreme Court has characterized the "objects of the litigation" element of the Silberg-test as "simply part of the [fourth] requirement that the communication be connected with, or have some logical relation to, the action, i.e., that it not be extraneous to the action." Silberg, 786 P.2d at 374. Here, not only was defendant Rapoza's statement connected to the California litigation, it allowed the case to proceed as the opinion forming the basis of the required CCP § 411.35 certification.

---

Response at 18. Contrary to plaintiff's assertion, however, the Court finds that defendants did not "abandon" their defense under § 47(b). Defendants go to great lengths in their motion to show that defendant Rapoza's July 1, 2003 e-mail was part of the required CCP § 411.35 certification precisely because this shows that the statement was made in the course of a judicial proceeding for § 47(b) privilege purposes and Washington's absolute immunity doctrine.

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT           -8-

For these reasons, based on undisputed facts, defendant Rapoza's e-mail is privileged under California Civil Code §47(b) and Silberg.[2] Rather than deciding the choice of law issue, the Court also concludes that defendants are entitled to summary judgment because they are immune under Washington's common-law witness immunity doctrine.[3]

### 2. Defendants are immune under Washington's absolute immunity doctrine.

In Washington, "absolute immunity extends to acts or statements of experts which arise in the course of or preliminary to judicial proceedings." Bruce, 113 Wn.2d at 137. Where the

---

[2] As defendants note on page 16 of their motion, dismissal of this case based on privilege accords with CCP § 411.35 because this section itself contains privilege protection for the engineer consulted. Id. at § 411.35(e) (stating "an attorney who submits a certificate as required by paragraph (1) or (2) of subdivision (b) has a privilege to refuse to disclose the identity of the . . . professional engineer . . . consulted and the contents of the consultation. The privilege shall also be held by the . . . professional engineer . . . so consulted." In this case, defendant Rapoza's identity and the contents of the June 1, 2003 e-mail were allegedly disclosed because plaintiff was able to match statements made in response to the May 27, 2005 motion for an order of noncompliance in the California Lawsuit with an earlier e-mail identified as being authored by defendant Rapoza during discovery. See Motion at 16; Response at 7.

[3] Because the Court concludes that defendant Rapoza's July 1, 2003 e-mail is protected under both California and Washington law, as in its order granting defendants' motion to dismiss, Dkt. #23, the Court does not need to reach the choice of law question. Although in his reply plaintiff suggested that Arkansas law might apply to defendants' statute of limitations and conditional privilege defenses, plaintiff did not apply Arkansas law to the immunity defense. See Response at 17-20. In any event, although the Arkansas Supreme Court has not directly addressed the immunity question presented in this case, the Court concludes that given prior case law, the Arkansas Supreme Court would likely conclude that defendant Rapoza's e-mail is covered by absolute immunity. See Medical Laboratory Mgmt. Consultants v. Am. Broadcasting Co., Inc., 306 F.3d 806, 812 (9th Cir. 2002) ("When a decision turns on applicable state law and the state's highest court has not adjudicated the issue, a federal court must make a reasonable determination of the result the highest state court would reach if it were deciding the case.") (citation omitted). Arkansas has adopted the Restatement (Second) of Torts § 586 (absolute immunity for statements made by an attorney preliminary to a proposed judicial proceeding), Pinkston v. Lovell, 759 S.W.2d 20, 22-23 (Ark. 1988), and § 587 (absolute immunity for statements made by a party preliminary to a proposed judicial proceeding), Routh Wrecker Serv., Inc. v. Washington, 980 S.W.2d 240, 245 (Ark. 1998). The Court's best judgment is that based on this precedent, Arkansas would likely adopt § 588 of the Restatement (Second) of Torts providing absolute immunity to statements of a witness preliminary to a proposed judicial proceeding given that §§ 586-588 are based on the same policies and principles.

absolute immunity doctrine applies, it justifies dismissal of an action. Id. at 125 (affirming the trial court's dismissal). In this case, Washington's absolute immunity doctrine extends to defendant Rapoza's e-mail because the e-mail was the statement of an expert arising in the course of a judicial proceeding.

Plaintiff attempts to avoid the clear holding from Bruce cited above by quoting other language from the opinion. Plaintiff argues that "[a]ny doubt that Bruce does not protect Rapoza or FSE in this case is removed by the Bruce Court itself:

> Respondents and amicus argue that Byrne-Stevens should not be shielded from liability merely because its calculations were later used in court. If the issue is stated that way, we agree; but that is not the issue before us. We do not hold that any professional negligence is immunized whenever an expert later relies on it in court. In accord with existing law, we hold only that absolute immunity extends to acts and statements of experts which arise in the course of or preliminary to judicial proceedings."

Response at 19 (emphasis by plaintiff) (quoting Bruce, 113 Wn.2d at 136-37). The quote from Bruce emphasized by plaintiff, however, is not at issue here because the inclusion of the June 1, 2003 e-mail in the California Lawsuit was not an attempt by defendant Rapoza to immunize some prior act of professional negligence. Therefore, contrary to plaintiff's assertion, his emphasized portion of the Bruce opinion does not remove defendant Rapoza's e-mail from the scope of Washington's absolute immunity doctrine.

Finally, Washington Supreme Court authority decided after Bruce supports the conclusion that Rapoza's statement is privileged. In Deatherage v. Examining Bd. of Psychology, 134 Wn.2d 131 (1997), the Court reiterated that the privilege applies to "any action done as part of a judicial function." Id. at 136. Here, the privilege applies because defendant Rapoza's e-mail served a judicial function since it formed the basis for the CCP § 411.35 certification in the California Lawsuit.

Washington's "[w]itness immunity is premised on the chilling effect of the threat of subsequent litigation" and "[u]nless the whole, integral enterprise falls within the scope of

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT           -10-

immunity, the chilling effect of threatened litigation will result in . . . adverse effects . . . regardless of the immunity shielding the courtroom testimony." Bruce, 113 Wn.2d at 132, 135. Dismissing plaintiff's claims on summary judgment adheres to this policy supporting Washington's immunity doctrine.

The Court originally dismissed this case because the allegations in the complaint showed that the July 1, 2003 statement was covered by California's litigation privilege and Washington's absolute immunity doctrine. The undisputed facts presented as a part of defendants' motion for summary judgment support this conclusion again. As a result, the Court need not reach the merits of defendants' statute of limitations and conditional immunity defenses.[4]

### III.  CONCLUSION

For all of the foregoing reasons, the Court GRANTS "Defendants' Motion for Summary Judgment Dismissal of Plaintiff's Claims" (Dkt. #30). The Clerk of Court is directed to enter judgment in favor of defendants and against plaintiff.

DATED this 28th day of August, 2007.

*[signature]*
Robert S. Lasnik
United States District Judge

---

[4] Given the basis for the Court's ruling, the Court denies as moot defendants' request to strike the Affidavit of Jerome DeVilbiss and portions of Plaintiff Newberry's affidavit. See Reply at 4-5; Dkt. #44 (Surreply).

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT           -11-